UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDGAR J. DIETRICH and BAY VALLEY HARBOR
APARTMENTS,

          Plaintiffs,

v.

AQUA-GOLD, INC., THOMAS P. MEYER,      
THOMAS KENNY, and PRIME FINANCIAL, INC.

          Defendants.

Case No. 07-11325

Honorable Julian Abele Cook, Jr.


ORDER

On September 13, 2007, the Plaintiffs, Edgar J. Dietrich and Bay Valley Harbor

Apartments, filed a motion in which they collectively sought to obtain a temporary restraining

order, as well as a preliminary injunction, against the Defendants,[1] Aqua-Gold, Inc. ("Aqua-Gold"),

Thomas P. Meyer, Thomas Kenny, and Prime Financial, Inc., citing Fed. R. Civ. P. 65 as the basis

for their request. In their motion, the Plaintiffs contend that they will suffer an irreparable injury

unless the Court provides each of them with some form of immediate injunctive relief against the

Defendants for their alleged misconduct. The Court disagrees.

In their petition for injunctive relief, all of the Plaintiffs maintain that they have justifiable

concerns that, without the intervention by the Court, the Defendants will seek to dispose of the

---

[1] On October 4, 2007, the Defendants Thomas P. Meyer and Aqua-Gold, Inc. filed an answer and brief in support of their answer opposing the Plaintiffs' motion for a temporary restraining order and preliminary injunction.

assets of Aqua-Gold.[2]  As evidence in support of their claim, it is the Plaintiffs' contention that the parties had a contractual relationship prior to September 13th which involved the business activities of Aqua-Gold.  They submit that each of the Defendants have violated their contractual obligations by, among other things, failing to provide them with a complete accounting of the current status of the Aqua-Gold.  As a result, it is their professed fear that this contractual breach is only a prelude to the unwarranted disposal of these corporate assets which, in turn, will cause them to sustain a significant monetary loss.  Thus, they have expressed a desire to obtain injunctive relief from the Court that will maintain the status quo of the parties until a hearing on the merits of all contested issues can be conducted and resolved.

In 2003, the Sixth Circuit Court of Appeals outlined four factors which should be considered by a district court when attempting to evaluate a request for injunctive relief by an aggrieved party; namely, whether (1) the moving party has demonstrated a strong likelihood of success on the merits of the claim; (2) the moving party will suffer an irreparable injury without the sought-after injunction; (3) the issuance of the requested injunction would likely cause substantial harm to others; and (4) the best interest of the public would be served by issuance of the injunctive relief.  *Jones v. City of Monroe,* 341 F.3d 474, 476 (6th Cir. 2003).  However, these are factors which should be balanced and not necessarily serve as necessary prerequisites that must be satisfied, excepting therefrom the obligation upon the moving party to demonstrate the existence of an irreparable injury.  *U.S. v. Michigan,* 230 F.R.D. 492, 494 (E.D. Mich. 2005).

In examining the Plaintiffs' petition for injunctive relief, the Court must initially seek to

---

[2]As a supplement to their motion, the Plaintiffs have also proffered their copy of a website record from the Office of the Nevada Secretary of State which denotes that the status of Aqua-Gold as a Nevada corporation was permanently revoked on September 1, 2007.  They also assert that the Defendants did not advise the Court of this change in the corporate status of Aqua-Gold during a Fed. R. Civ. P. 16 conference on September 11, 2007.

determine if they have demonstrated a strong likelihood of success on the merits of the claim. Here, the Plaintiffs have proffered the answers and affirmative defenses by two of the Defendants, Aqua-Gold and Meyer, in which they acknowledge that this corporation "entered into an agreement to assume debt and agreed to pay Dietrich for the borrowed funds and to give him shares of Aqua-Gold, Inc." (Aqua-Gold and Meyer Answer, ¶¶36, 40.) In the judgment of the Court, this acknowledgment by the Defendants weighs heavily in the Plaintiffs' favor when attempting to evaluate the likelihood of the success on the merits of their claim. Thus, the Court believes that, when examining the unchallenged facts from the Plaintiffs' point of view, they have succeeded on this issue.

However, the second factor (i.e., whether the moving parties will suffer an irreparable injury in the absence of injunctive relief) is more problematic. On this issue, the Plaintiffs argue that (1) the Defendants "have repeatedly indicated they are without assets" and (2) the assets of Aqua-Gold, are their only potential source of recovery. It is their view that a restraining order is the only judicial measure by which they can hope to preserve an asset from which to satisfy a judgment against the Defendants. Here, the Plaintiffs have only pointed to potential sale of the Aqua-Gold assets as the basis for their claim of an irreparable injury. The phrase, "irreparable injury," can be succinctly defined as "an injury that cannot be adequately measured or compensated by money and is therefore often considered remediable by injunction." Black's Law Dictionary, 790 (7th ed. 1999).

The apparent basis for the Plaintiffs' fear in this situation appears to be a potential loss of money to them if the sale or distribution of the Aqua-Gold. assets is not stopped with some form of injunctive relief. The law in the Sixth Circuit is quite clear. A claimed loss - in a form which has been described to the Court by the Plaintiffs, with only a few exceptions that are not applicable

in this case - is not considered to be "irreparable" if it is fully compensable by money damages. *U.S. v. Michigan,* 230 F.R.D. 492, 494 (*citing Basicomputer Corp. V. Scott,* 973 F.2d 507, 511 (6th Cir. 1992)). Here, it is apparent to the Court that the ultimate relief which the Plaintiffs seek to obtain through their request for a temporary restraining order is to garner all or most of the funds that have been, or will be, collected from a sale or a dissolution of the business activities of Aqua-Gold. If these allegations are true, the Plaintiffs will be in a position to ultimately obtain a judgment against the Defendants and, thereafter, seek and obtain such post-trial relief as may be appropriate under the circumstances. Thus, in the opinion of the Court, the Plaintiffs' request for a temporary restraining order is not supported by the applicable case law in the Sixth Circuit and must be denied..[3]

Although the circumstances in this case do not warrant the issuance of a temporary restraining order at the present time, the Court will nonetheless evaluate the remaining *Jones* factors for the sake of completeness. In speaking to the third factor, the Plaintiffs assert that none of the Defendants will suffer any substantial harm if a temporary restraining order is issued at this time, noting that the corporate status of Aqua-Gold has been permanently revoked. The Court believes that this evidence which, upon being accepted in its unchallenged state, supports their application for injunctive relief.

The fourth and final factor for the Court to consider is whether the best interest of the public would be served by issuance of injunctive relief in the form of a temporary restraining order. Here, the Plaintiffs have charged the Defendants in the Complaint with having used Aqua-Gold as a part of a fraudulent investment scheme. It is their contention that the prevention of the Defendants from

---

[3]It should be noted that the rationale and the conclusions within this opinion are only applicable to the Plaintiffs' request for the entry of a temporary restraining order and will not necessarily apply to any issues relating to their application for a preliminary injunction.

transferring the assets of Aqua-Gold will preclude other members of the public from becoming victims of a fraudulent investment scheme. This argument, while speculative without definitive proof, supports the Plaintiffs' belief that this fourth *Jones* factor has been satisfied.

Accordingly, and after carefully considering all of the Plaintiffs' proffered evidence in support of their joint request for the issuance of a temporary restraining order, the Court concludes that this motion should be denied. Here, the Plaintiffs have failed to satisfy their requisite burden of proving that they will suffer irreparable harm in the absence of a temporary restraining order.

Finally, the Plaintiffs and the Defendants, through their respective representatives, are directed to appear before this Court on November 14, 2007 at 1:00 p.m. for a hearing on the Plaintiffs' motion for preliminary injunction. Briefs by the parties on this issue shall be filed with the Court on or before October 24, 2007. Replies must be submitted by the respective parties on or before October 31, 2007.

IT IS SO ORDERED.

Date:   October 16, 2007                              s/ Julian Abele Cook, Jr.
        Detroit, Michigan                             JULIAN ABELE COOK, JR.
                                                      United States District Court Judge

Certificate of Service

I hereby certify that on October 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                      s/ Kay Alford
                                                      Courtroom Deputy Clerk